# United States Court of Appeals
## For the First Circuit

No. 18-1256

HEATHER TYLER,

Plaintiff, Appellant,

v.

SUPREME JUDICIAL COURT OF MASSACHUSETTS; HON. RALPH D. GANTS;
HON. ELSPETH B. CYPHER; HON. BARBARA A. LENK; HON. SCOTT L.
KAFKER; HON. FRANK M. GAZIANO; HON. DAVID A. LOWY;
HON. KIMBERLY S. BUDD; MAURA HEALEY, Attorney General for the
Commonwealth, in her official capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Wendy Murphy for appellant.
Todd M. Blume, Assistant Attorney General, Criminal Bureau,
with whom Maura Healy, Attorney General, was on brief, for
appellee.

January 28, 2019

**KAYATTA**, **Circuit Judge**.  This appeal arises from Heather Tyler's six-year-long legal battle to void two Massachusetts Superior Court conditions of probation imposed on the adult male who was convicted of statutory rape after impregnating her when she was a minor.  The district court found that Tyler's suit was, in essence, an appeal from a state-court judgment, and that the district court therefore lacked jurisdiction to hear it under the Rooker-Feldman doctrine.[1]  For the following reasons, we agree.

## I.

In 2009, at age nineteen or twenty, Jamie Melendez impregnated fourteen-year-old Heather Tyler.[2]  Tyler gave birth in 2010.  Upon pleading guilty in state court to the statutory rape of Tyler, Melendez received a sentence of sixteen years of probation.  As conditions of probation, the sentencing judge ordered Melendez to acknowledge paternity of the child and abide by all orders of the Massachusetts Probate and Family Court.

In August 2012, after learning that Melendez sought to obtain parental visitation rights in the Probate and Family Court, Tyler filed a motion with the criminal sentencing judge seeking reversal of the conditions of probation mentioned above.  She

---

[1] See Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[2] The record is unclear as to Melendez's exact age at the time.

- 2 -

objected to the conditions on the grounds that Melendez's compliance with them would bind her to an unwanted sixteen-year legal relationship with Melendez in the Probate and Family Court. She requested that Melendez instead pay criminal restitution, rather than child support, to relieve her of the burden of continued engagement with him in family court. The sentencing court denied Tyler's request. Tyler also sought relief from a single justice of the Supreme Judicial Court of Massachusetts (SJC) pursuant to Mass. Gen. Laws ch. 211, § 3. After the single justice denied Tyler's motion, and Tyler appealed, the full SJC held oral argument on Tyler's claims. The SJC affirmed the decision of the single justice on the grounds that, as a victim of a criminal offense, Tyler lacked standing to challenge Melendez's criminal sentence. See H.T. v. Commonwealth, 989 N.E.2d 424, 425 (Mass. 2013). The SJC also advised that Tyler could "raise any claim of error, including any claim that the [Probate and Family Court] exceeded its lawful authority, in the ordinary appellate process." Id. at 426.

Tyler then filed an action under the Federal Civil Rights Act, 42 U.S.C. § 1983, in the District Court of Massachusetts, seeking review of substantially the same grievances. In November 2013, the district court dismissed the action as barred by the Eleventh Amendment. Tyler v. Massachusetts, 981 F. Supp. 2d 92,

- 3 -

96 (D. Mass. 2013). The court also noted that the Burford[3] and Younger[4] abstention doctrines counseled against adjudicating Tyler's claims. Id. at 96–97. Tyler did not appeal.

In November 2013, Tyler filed a motion in the Probate and Family Court seeking either to vacate the court's jurisdiction or to terminate Melendez's parental rights. She contended that an adult convicted of statutory rape should have no parental rights with respect to a child born as a result of that crime. After the family court denied her motion, Tyler sought review in the Appeals Court of Massachusetts. The Appeals Court affirmed, holding that "nothing in the language of [the family court statute, Mass. Gen. Laws ch. 209C,] expressly limits its applicability solely to children born as a result of lawful intercourse." H.T. v. J.M., No. 15-P-1042, 2016 WL 7046435, at *2 (Mass. App. Ct. Dec. 5, 2016), appeal denied, 75 N.E.3d 1130 (Mass. 2017). The Appeals Court also discussed a 2014 amendment to the Massachusetts family court statute,[5] reasoning that since it was "apparent from [the

---

[3] See Burford v. Sun Oil Co., 319 U.S. 315 (1943).

[4] See Younger v. Harris, 401 U.S. 37 (1971).

[5] In 2014, the Massachusetts legislature amended the family court statute to specify that the family court should grant visitation rights to a parent convicted of statutory rape only if "visitation is in the best interest of the child" and "either the other parent of the child conceived during the commission of that rape has reached the age of 18 and said parent consents to such visitation or the judge makes an independent determination that visitation is in the best interest of the child." 2014 Mass.

amendment's] language that it was designed to limit, rather than to expand, the court's existing authority," the statute must have previously authorized family courts to adjudicate the parental rights of a parent convicted of statutory rape. Id. Finally, the Appeals Court denied Tyler's plea to vacate jurisdiction as a matter of public policy, noting that "the mother's desired disposition [would] require us to treat the father more favorably than other biological fathers, [and] it also would unfairly disadvantage the child by depriving her of the right to receive financial support from both parents." Id. at *3. In 2017, the SJC denied Tyler's application for further appellate review. See H.T. v. J.M., 75 N.E.3d 1130 (Mass. 2017).

Rather than seeking a writ of certiorari from the United States Supreme Court, Tyler filed this action in the District of Massachusetts, alleging that the "recent ruling of the Massachusetts Supreme Judicial Court" violated her Fourth and Fourteenth Amendment rights to due process, privacy, and equal protection. She sought relief declaring the 2017 SJC decision unconstitutional and "prevent[ing] all courts in the Commonwealth [of Massachusetts] from asserting jurisdiction on behalf of convicted rapists who impregnate their victims." The district court decided that it did not have jurisdiction over the claims:

_____

Legis. Serv. ch. 260 (West) (codified as amended at Mass. Gen. Laws. ch. 209C, § 3(a)).

- 5 -

"The Rooker-Feldman doctrine prevents consideration because [Tyler] present[s] a dispute brought by an unsuccessful litigant in the state courts seeking to have a lower federal court review and reject a state court judgment rendered before the federal litigation commenced." Tyler v. Supreme Judicial Court of Mass., 292 F. Supp. 3d 555, 556 (D. Mass. 2018) (footnote omitted). This appeal followed.

## II.

Under the Rooker-Feldman doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006). The idea is that -- absent exceptions not present here -- the only federal court with statutory jurisdiction to review a state court's decision is the Supreme Court, and "an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." Rooker, 263 U.S. at 416. The Rooker-Feldman doctrine bars jurisdiction "only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 23-24 (1st Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)).

- 6 -

The record makes plain that Tyler came to federal court seeking an end-run around the SJC's 2017 decision allowing the Probate and Family Court to adjudicate Melendez's parental rights. Tyler's brief to this court concedes that her complaint "asks the federal court to reverse the state court judgment." And the complaint does indeed request that the district court "[d]eclar[e] the Supreme Judicial Court's decision unconstitutional." The complaint also repeatedly identifies the SJC's 2017 decision as the exclusive cause of Tyler's injury. After discussing the state-court proceedings culminating with the denial of her application for further appellate review "by the Supreme Judicial Court on January 26, 2017," Tyler details three counts all challenging that decision. Count I alleges that the "ruling threatens Plaintiff's rights by exposing Plaintiff to an unlawful restraint on her liberty and a seizure of her person"; Count II alleges that the "ruling threatens Plaintiff's liberty and privacy"; and Count III alleges that the "decision violates Plaintiff's equal protection rights." "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Tyler seeks haven from the application of this doctrine by arguing that, "[a]lthough [she] raised the federal issues in every state court proceeding, Rooker-Feldman poses no bar because none of her federal claims was actually decided by any state court."  The record contradicts this assertion;  in ruling against Tyler, the Massachusetts Appeals Court wrote that it did not "overlook[]" any of her contentions, but rather found "nothing in them that require[d] discussion."  H.T. v. J.M., 2016 WL 7046435, at *3 n.10 (quoting Dep't of Revenue v. Ryan R., 816 N.E.2d 1020, 1027 (Mass. App. Ct. 2004)).  Moreover, the Rooker-Feldman jurisdictional bar "is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit.  Instead, the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment."  Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018) (citation omitted).

Tyler counters that we should read the state court's statement that her contentions did not require discussion to mean that the state court believed that it lacked standing to entertain her federal claims on the merits.  Hence, she argues, the state court arrived at no final judgment susceptible to challenge or "end-run."  We cannot agree.  As the Appeals Court's opinion itself notes, the 2013 SJC opinion rejecting for lack of standing Tyler's

- 8 -

attempt to intervene in the criminal proceeding declared that Tyler would have standing to assert her claims in an appeal from an order of the Family and Probate Court. See H.T. v. Commonwealth, 989 N.E.2d at 426; H.T. v. J.M., 2016 WL 7046435, at *1 ("The [SJC] explained . . . that it remained open to the mother to raise any claim of error in the ordinary appellate process from proceedings in the Probate and Family Court."). It would therefore make no sense to interpret the Appeals Court's opinion in the appeal arising out of the Probate and Family Court proceedings as incorporating the SJC's standing analysis from the prior criminal case, barring her from taking the precise action blessed by the SJC. Besides, Tyler has given us no reason to believe that her standing was even contested in either the Appeals Court case or the 2017 SJC appeal. We therefore read the Appeals Court's footnote to mean that it reached Tyler's federal constitutional claims and summarily rejected them on their merits. So, when the SJC declined to review the Appeals Court's decision, the state-court system ruled finally on Tyler's constitutional claims.

This analysis also disposes of Tyler's alternative argument: that she is not seeking a reversal of the state-court judgment, but rather presenting an independent, "general challenge to the constitutionality of state law." It is true that the Rooker-Feldman doctrine does not bar a "general attack on the constitutionality" of a state law that "do[es] not require review

of a judicial decision in a particular case." Feldman, 460 U.S. at 487. "'If a federal plaintiff "presents an independent claim,"' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." Skinner v. Switzer, 562 U.S. 521, 532 (2011) (alterations omitted) (quoting Exxon Mobil Corp., 544 U.S. at 292-93). But that exception does not apply "if the relief sought in federal court is directed towards undoing the prior state judgment." Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 34 (1st Cir. 2004). As we have explained, the relief Tyler seeks is entirely predicated on her insistence that the SJC erred in the 2017 adjudication of her case. Her attempt to reframe the case as an independent challenge to the Massachusetts law is therefore "felled by [her] own complaint." McKenna v. Curtin, 869 F.3d 44, 48 (1st Cir. 2017).

Finally, Tyler argues that "the state proceedings have not ended with regard to the federal issues [she] seeks to have reviewed in federal court." See Exxon Mobil Corp., 544 U.S. at 291 (holding that the Rooker-Feldman doctrine only applies when the losing party in state court files suit in federal court "after the state proceedings ended"). In connection with this argument, she observes that her family court matters "will remain pending for at least another ten years." But she offers no suggestion that the family court will ever reconsider the federal claims she

presses here. See Federación de Maestros, 410 F.3d at 25 (observing that state proceedings have ended for purposes of the Rooker-Feldman doctrine when "the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions . . . remain to be litigated").

In sum, Tyler is a "losing party in state court [who] filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Federación de Maestros, 410 F.3d at 24 (quoting Exxon Mobil Corp., 544 U.S. at 291). The district court therefore correctly held that it lacked jurisdiction to hear Tyler's claims.

## III.

For the foregoing reasons, we affirm the district court's dismissal for want of jurisdiction.